We move to the third case this morning, U.S. v. Skaggs. Mr. Carlson? May it please the court, my name is Kent Carlson and I am court-appointed counsel for Charles Skaggs. This court granted Mr. Skaggs leave to file a supplemental brief that raised issues that were not raised in the brief that I filed. I do not intend on arguing any of those points unless the court requests that I do so. But Mr. Skaggs has asked me to ask this court to consider those arguments that he has made, even though they're not argued here today. Well, you've asked us. He's asked us and we will. We'll consider them. Sure. I also want to, as I stated in my brief, advise the court that the border search issue that was raised was raised solely to preserve that issue for Supreme Court review. Dishonorable courts' decision in Juanico, I think, controls and is indistinguishable in almost every respect from the facts of this case. So I don't intend on arguing that point either. The sentencing issue is really the issue that I'm focusing on here. Well, I argued that the mandatory life sentence was improper for one reason. The government conceded for another reason that it's improper. And I don't know that we need to decide which one of those is correct, being that both sides agree. And I presume the court will agree that it was error to apply the mandatory life sentence in this case. Isn't the essence of that point in the case, which I agree is a serious point, what we're to make of the district court judge's comment right toward the end? And it looks to me like life is the right sentence anyway. I mean, it's just sort of a quick comment. But it does say that that's the sentence the court would have chosen. And I agree the court did say that. I think, however, what we have to keep in mind here is that the court had already decided that it had no discretion but to impose a mandatory minimum sentence. And the judge made that clear to the parties. Mr. Skaggs did not, in light of that, did not argue the 3553 factors at all because he was already told that a mandatory life sentence was the sentence that had to be imposed. And so I think that was one reason that we have to look at. The other is that the court never reached the 18 U.S.C. 2251 sentencing factors. The original sentence for counts one through nine would have been a mandatory minimum 15 years and a maximum of 30. If the judge made findings that it was a covered sexual offense, that would have been brought from 25 years, mandatory minimum, to a 50-year maximum. The court never addressed those factors. So not only do we have a situation where the court didn't address those factors, Mr. Skaggs didn't present the 3553 factors. And quite honestly, I think what it comes down to me is if a judge is going to impose a life sentence on somebody, it should be imposed properly after having considered all of the factors. So you would distinguish this remark from the situation where perhaps the judge says, I think it's a mandatory life sentence, but now I'm going to put another hat on and say, if it's not, here are the 3553A factors and blah, blah, blah, and really had gone through it all. Yes, I think so. And that's the best we could get on remand, I assume. I would agree that that is what it would be. She might decide it's still a life sentence. She may very well decide that, but we don't know that. And it's the government's part of it. My concern here, Mr. Carlson, is we do know that. She's told us that. And, you know, for years, this court, particularly since Booker, has been telling district judges, in essence, give us a backstop. Think about the possibility that there's a legal error in the sentence that you're imposing and tell us whether it would make a difference to you. And that seems to me to be the only reason for Judge Barker to have made this comment, to say that even if the life sentence were not mandatory, this is such a horrific case that I would impose it anyway. I think had the court considered all of the other factors. She does say the seriousness of the conduct that was reflected in counts one through nine. And we're talking about this little blip at the bottom of page 50 and the top of page 51 of the transcript, which is at appendix 15 and 16. So you're quite right. I mean, it's not an exhaustive discussion of these factors, but she does highlight the seriousness of the conduct. And she does mention those things. But again, she does not address the mandatory minimum and maximum sentences under 2251, which are factors that, quite honestly, I think need to be decided in a case like this. Well, she does say that pedophilia is a long-term problem and struggles to reinforce, in my opinion, has been a very long pattern of behavior that has to be curtailed by this court's sentence today. And I agree she says that. But again, she does not address the 2251 factors, which I think would have to be addressed if the court is saying it would impose a life sentence anyway. I think in order to do that, she has to address those factors as well as all of the 3553 factors. And that was just not done here. What's the relevance here, do you think, of the fact that Mr. Skaggs chose to represent himself in the district court? It's easy for me to understand that if you've been representing him at sentencing, this likely would have unfolded in a very different way. But he chose to represent himself. He made some arguments, didn't make others, created a record on some issues, not on others. I don't know how to answer that question. I obviously believe that he would have been much better served by having counsel. I think he hurt himself in many respects by representing himself. I think all of those things are true. And I think in the grand scheme of things in the sentencing issues, when he heard that it was a mandatory life sentence, he foolishly said, I'm not going to then argue the 3553 factors if you're telling me it doesn't matter. And so I think all of those things together are reasons why this matter should be remanded for resentencing. Unless there are any other questions, I don't have anything else at this point. Thank you, Counsel. Mr. Wood? Your Honor, may it please the Court, Bob Wood on behalf of the United States Counsel. I would start by saying that, as Judge Hamilton said, we know we have a very strong indication in the record of what Judge Barker will do on remand. And the Court should take consideration of that. As for the 3553 factors, of course, it's not a comprehensive evaluation, but deterrence and seriousness of the offense are there. And I think it also matters – this is not a statutory or a guidelines prescription, but this judge didn't only know the facts very well, having just seen a trial. And this isn't a sentencing-only appeal, but she had ample opportunity to take the measure of the defendant before her, given that he represented himself and saw testimony from his family at the trial. So the judge was very familiar with the case in opposing the sentence. And I say that not because that is a legal principle that makes any sentence thus announced sound, but it underscores that the likelihood of this changing on remand is very low because it seems exceedingly unlikely that the district court will learn something new that will change her mind. Here's what worries me about this whole scenario, and this is in some ways bigger than just this case. We have indeed encouraged district court judges, after they're finished with all of the guidelines analysis and the rest of it and they've come up with a sentence, to say, you know, here's where I would have come out. Maybe this criminal history point or maybe this offense level or whatever it may be isn't really driving my decision. It's being driven by my broader sentencing discretion. But on the other hand, the Supreme Court keeps telling us that the sentencing guidelines do matter. We have to start with the guidelines. We know from Gall in other cases, we know that there are even ex post facto problems with the guidelines, which is pretty strong medicine. And I'm worried that if all a district judge has to do at the end of every sentencing is just to say, and this is what I would have done anyway, you know, the guidelines might as well be out the window. They just don't mean anything anymore. And so what we are looking for is some sense of a real reflection on that final comment. And if a judge explains it in some detail, and I realize it doesn't have to be a book long exegesis, but something more than just a quick statement. I worry that if the quick statement alone will do, why are we wasting our time with the guidelines? Your Honor, I tend to agree with that in the following sense. I've been on both sides of sentencing appeals several times in this circuit and other circuits, and the best fodder for the government is always lack of an explanation, right? But here there is something that distinguishes, I can't say across the board, but at least this case from cases that I've handled where I've gotten permission from the solicitor general to move forward. The judge said, this is what I would do in my discretion, and that's a guidelines term. She's been a judge forever. She knows that. And separately, this isn't part of, this doesn't directly go to Your Honor's point, but a lot of Mr. Skaggs' counsel's argument has been about what mandatory minimums would apply on remand. It seems to me, we haven't been called upon to brief this, we could supplementarily brief this, but it seems to me that it's beyond reasonable dispute that the 25 years would apply. We're talking, just given this court's recent precedence, I'm not going to cite cases that I didn't cite in my brief, but the related to language of the statute, his sexual misconduct with a minor directly relates to sexual abuse of a minor, or whatever the language is in 2251E, in a way that would mean that the judge could, would be, would still have a mandatory minimum of 25 years. With respect to each count, the judge has essentially already announced the total punishment. So there's a typo in my brief where I said in the wrong section of the guidelines, 5G1.3. 5G1.2 is, of course, what I meant to cite. The judge has announced the total punishment at this point. We have a record of that life. That's what I would get, give, and all we have at this point is how do you get there? And the judge is going to have nine 25-year mandatory minimum sentences to get there. If she so chooses, we know that's what she will choose. That's 225 years, which is life for everyone. So how old is Mr. Skaggs at this point? He's in his mid-50s, I believe, but I would defer. I think he was born in the 60s. Even a 25-year, even concurrent then, would put him up pretty old. And he has other offenses here, of course, again, under 5G1.2, that those are concurrent if you have a mandatory life. The guidelines are life because the number is so high. It's 360 to life, but convert it to life. He has these offenses where he hit evidence, and then I doubt the possession elements, as opposed to production would enhance the sentence. But we have all these counts of production. It seems to me that a remand just to say, okay, judge, can you do the math for us to achieve the total punishment you have already said you would impose in your discretion is judicial resources are never a particularly strong argument in the face of a legal question like, how do the guidelines apply? We must make sure 3553A and the guidelines sync up in a given case. And that's the problem. Is this just a quick aside? She uses the magic word, am I discretion, or is this really a signal from Judge Barker, who I, of course, have the utmost respect for, as I do for our district courts in general? But is there some duty if you're going to have this guideline override to explain yourself further? Well, I have to say I used to sentence before there were guidelines, and you didn't need to say anything. But I think here she did go in and say it's a long-term problem. It's a very long pattern of behavior to be curtailed by the court sentence today. I don't know what else you say when you give a life sentence other than to say something like that. I agree. And as for this judge, again, the weight of this, I understand it's not a ton of weight, but she is, in cases that I've had involving her sentencing decisions, she is disinclined to revisit crimes in the child pornography context at length in doing 3553A analysis. She wouldn't say, having sat through and done the findings of fact and conclusions of law in a case like this, having had the sentencing focused on something else, her reference to the seriousness of the offense is not atypical for her or for a lot of judges who would prefer when they have already demonstrated familiarity with a case not to revisit a sort of past judgment on the defendant. But a crime that's hard to talk about. Also, the life sentence within the guideline range. Yes, it is the guidelines. Life is now, it's 360 to life converted to life given the 225, or 95, let's say, of the other mandatory minimums. But, Mr. Wood, I've got to ask the question here. The error that you've identified in the sentencing here looks pretty straightforward. And I've got to ask, we know Mr. Skaggs was pro se, but how did the government and the U.S. Attorney's Office and the probation office miss this one? Do we know? I do not know, Your Honor. I was not part of the case until appeal when we, I'll say this because hopefully he'll listen and this will make him happy. I gave this as an assignment to an intern from IU over the summer and said, take a look at this sentencing issue and see what you come up with. And he came back within about a half hour and he said, I don't, I can't figure out how this works. And I hadn't even looked at it yet. I was planning to look at it after him. But I said, I looked at it for five minutes or something and said, well, I'm going to go, well, let's walk down to the trial AUSAs. And there convened thus some supervisors and fairly quickly it was obvious that everybody involved had just made a mistake. When I passed it up to the Solicitor General's Office for an air confession, or to the criminal appellate for an air confession, the response was the darkest I've ever received. I have no means or manner to defend what happened. It's just people make mistakes. That's all I can say. Hopefully we won't make the same mistake twice. That's all I can say. I am able to talk through other supplemental or non-supplemental issues. But if the court would like, I can rest on my laurels. Thank you. I don't hear any questions otherwise. Thank you. Counsel, do you have anything further? I do not, Your Honor. Thanks to both counsel. And the case is taken under advisement.